**McCarter & English, LLP**
Lanny S. Kurzweil, Esq.
Ryan Richman, Esq.
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 639-2044
Facsimile: (973) 297-3810
lkurzweil@mccarter.com
rrichman@mccarter.com
*Attorneys for Defendants, E. I. du Pont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEPHEN WILSON AND KIM WILSON, | |
| Plaintiffs, | **Civil Action No. _____** |
| v. | |
| A CLEMENTE, INC.; ANTHONY CLEMENTE, INC.; SOLVAY SPECIALTY POLYMERS, USA, LLC; SOLVAY SOLEXIS, INC.; ARKEMA, INC.; E. I. du PONT de NEMOURS & COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CAMDEN COUNTY ENERGY RECOVERY ASSOCIATES LP; CAMDEN COUNTY ENERGY RECOVERY CORP.; FOSTER WHEELER CAMDEN COUNTY INC.; COVANTA CAMDEN GP, LLC; THE 3M COMPANY; and JOHN DOE ENTITIES #1-20, | **NOTICE OF REMOVAL ON BEHALF OF E. I. du PONT de NEMOURS AND COMPANY** |
| Defendants. | |

**TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

Defendant E. I. du Pont de Nemours and Company ("DuPont") hereby removes the above-captioned case pursuant to 28 U.S.C. § 1442 from the Superior Court of New Jersey, Law Division, Salem County, to the United States District Court for the District of New Jersey. The grounds for removal are as follows:

**I.   BACKGROUND**

   **A.   Allegations of Plaintiffs' Complaint**

1. This suit involves claims against DuPont for acts taken under the express authority and control of agencies and officers of the United States. It is thus removable under 28 U.S.C. § 1442(a)(1).

2. On March 4, 2022, Plaintiffs Stephen Wilson and Kim Wilson (collectively "Plaintiffs") filed a Complaint in the Superior Court of New Jersey, Law Division, Middlesex County, in a case captioned as *Wilson v. Clemente, Inc., et al.*, Case No. MID-L-001204-22. This case has since been transferred to the Superior Court for Salem County and its new Case Number is SLM-L-000056-22. This Complaint lists as defendants A. Clemente, Inc.; Anthony Clemente, Inc.; Solvay Specialty Polymers, USA, LLC; Solvay Solexis, Inc.; Arkema, Inc.; DuPont; The Chemours Company; The Chemours Company FC, LLC; Camden County Energy Recovery Associates LP; Camden County Energy Recovery Corp.; Foster Wheeler Camden County Inc.; Covanta Camden GP, LLC; The 3M Company; and John Doe Entities #1-20. A true and correct copy of the Complaint is attached hereto as Exhibit A.

3. The Complaint was served on DuPont on April 4, 2022.

4. The Complaint alleges that from 1891 to 2015, DuPont owned and operated Chambers Works, a plant located at 67 Canal Road and Route 130, in Pennsville and Carneys Point Townships, Salem County ("Chambers Works" or the "Site"). Exhibit A at ¶ 73.

5. The Complaint alleges that during this time DuPont produced, used, and discharged into the environment approximately 1,200 separate chemicals, pollutants, and other hazardous substances at Chambers Works. *Id.* at ¶ 74.

6. Plaintiffs allege in the Complaint that multiple broad categories or types of chemicals or products, either alone or in combination, caused or contributed to their personal injuries, including (among others): (1) poly- and perfluoroalkyl substances ("PFAS"); (2) halogenated hydrocarbons; and (3) "numerous mixtures and wastes consisting of multiple compounds, substances, and/or products (*e.g.*, . . . fuel, explosives, [and] ammunition …)". *Id.* at ¶ 4.[1] Throughout the Complaint, Plaintiffs reiterate the breadth of the chemicals included in their allegations by referencing PFAS and characterizing those compounds as among purported "other toxins." *See, e.g.*, *id.* at ¶¶ 5, 74, 119, 132, 153, 162, 168.

---

[1] DuPont does not consider Plaintiffs' Complaint adequately pled under either New Jersey or federal pleading standards. DuPont's references to and discussion of Plaintiffs' allegations for purpose of this Notice are solely for purposes of demonstrating the propriety of removal and the existence of federal subject-matter jurisdiction, without waiver of any defenses, including as to the sufficiency of the Complaint or allegations within it.

**B.     DuPont Manufactured Chemical Compounds At Its Chambers Works Site Under Federal Direction**

7.      Throughout the World War II period, DuPont entered into numerous contracts with the United States for the manufacturing of chemical compounds to be produced at Chambers Works and to be used by the United States and its Allies to support the war effort.

8.      These government contracts, as described below, compelled DuPont in some circumstances to build additional manufacturing plants at Chambers Works, and to vastly increase the volume of chemical compounds manufactured at Chambers Works. The manufacture of these chemical compounds necessarily resulted in air and water discharges inherently associated with DuPont's manufacturing processes.

**Contract No. W-670-ORD-2210 to Produce Dinitrotoluene**

9.      On April 23, 1942, DuPont entered into contract No. W-670-ORD-2210 with the United States that required the production of 1,550,000 pounds of dinitrotoluene at Chambers Works. Dinitrotoluene is a precursor to trinitrotoluene (TNT), an explosive. Plaintiffs allege that explosives chemicals released into the environment from Chambers Works caused or contributed to their injuries. Exhibit A at ¶ 4.

10.     Contract W-670-CRD-2210 mandated that DuPont produce dinitrotoluene in strict accordance with United States Army specifications.

**Contract No. W-7412-Eng-2 to Produce Perfluoroheptane**

11.     On November 17, 1942, DuPont entered into contract No. W-7412-Eng-2 with the United States to erect a plant to be located at the Chambers Works Site. The new plant was

intended to produce 20,000 pounds of perfluoroheptane at the earliest possible date. Perfluoroheptane is a halogenated hydrocarbon. Plaintiffs allege that halogenated hydrocarbons released into the environment from Chambers Works caused or contributed to their injuries. Exhibit A at ¶ 4.

12. DuPont accepted the terms of the government's contract No. W-7412-Eng-2 with several conditions, including that the parties would agree on the correct specifications for the production of perfluoroheptane. The contract also provided that because DuPont had no experience manufacturing perfluoroheptane, nor any history of building a plant for the production of this chemical prior to doing so at the government's behest, any failure to perform the government's work successfully would not subject DuPont to liability nor prejudice its right to be paid.

### Contract No. W-7412-Eng-6 to Produce Perfluoroxylene and Fluorolube

13. On June 1, 1944, the United States Army Corps of Engineers ("Corps of Engineers") authorized DuPont, by Letter Contract W-7412-Eng-6, to construct and operate a large-scale plant at Chambers Works for the manufacture of perfluoroxylene and fluorolube. Perfluoroxylene and fluorolube are halogenated hydrocarbons. Plaintiffs allege that halogenated hydrocarbons released into the environment from Chambers Works caused or contributed to their injuries. Exhibit A at ¶ 4.

14. DuPont was requested to furnish labor, material, tools, machinery, equipment, facilities, and supplies not furnished by the United States to complete this project. DuPont was instructed by the government to do everything necessary for the construction of a plant to produce 3550 pounds of perfluoroxylene per day and 215 pounds of fluorolube per day. The plant would

be owned by the government and located on DuPont's land at Chambers Works, which would be leased or licensed to the government for the period of the contract. The plant was to be in operation no later than September 1, 1943.

### Contract No. W-7412-Eng-3 to Produce Uranium Products

15.     On November 20, 1942, the Corps of Engineers, by Letter Contract W-7412-Eng-3, placed an order with DuPont to furnish, in the shortest possible time, all labor, material, and equipment to construct plants at Chambers Works for the: (1) manufacture of uranium dioxide; (2) conversion of uranium dioxide to uranium tetrafluoride; and (3) conversion of uranium tetrafluoride to metallic uranium. These compounds fall under Plaintiffs' description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which they allege caused their injuries. Exhibit A at ¶ 4.

16.     Full-scale operation of the above plants at Chambers Works was ordered by the government to be complete by May 25, 1943.

17.     Because DuPont had no experience in the design, construction, or operation of plants of this nature, except for the production of uranium tetrafluoride, the terms of Letter Contract W-7412-Eng-3 protected DuPont's right to be paid by the government and shielded DuPont from liability in the event that a goal outlined in the Letter Contract was not fulfilled.

### Contract No. W-7412-Eng-22 to Produce Tetramag Slag and Dross

18.     DuPont and the United States government thereafter entered into Letter contract No. W-7412-Eng-22. This contract called for the erection of a Recovery Plant at Chambers Works to convert tetracal slag and dross and tetramag slag and dross, which would be supplied to DuPont

by the government, into a satisfactory feed material to manufacture uranium dioxide as authorized by Letter Contract W-7412-Eng-3. The compounds involved in this manufacturing process fall under the Plaintiffs' description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which they allege caused their injuries. Exhibit A at ¶ 4.

19. The Recovery Plant was to have an estimated capacity to produce feed material in sufficient quantity so that DuPont could operate the uranium dioxide plant at a capacity to produce 47 tons of uranium dioxide per month.

20. For the purposes of housing production equipment to be used to manufacture uranium dioxide, DuPont buildings at Chambers Works were to be rented by the government; and temporary buildings constructed at Chambers Works were to be owned and paid for by the government.

21. Letter Contract W-7412-Eng-22 mandated that the Recovery Plant be ready for full scale operation not later than September 1, 1943.

22. The formal contract, as executed on May 10, 1944, provided for the conversion of two types of slag and dross to peruranic acid as a feed material for the manufacture of uranium dioxide. The plant at Chambers Works was designed to have a processing capacity of 130 tons of slag and 14.5 tons of dross per month to produce 44.5 tons of peruranic acid. Peruranic acid falls under the Plaintiffs' description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which they allege caused their injuries. *Id.* at ¶ 4.

**Contract No. W-7412-Eng-8 to Produce Redistilled Anhydrous Hydrofluoric Acid**

23. Additionally, by Letter Contract W-7412-Eng-8, issued on December 31, 1942, the Corps of Engineers requested that equipment be installed in buildings situated within Chambers Works for the purpose of producing 300,000 pounds of redistilled anhydrous hydrofluoric acid. Redistilled anhydrous hydrofluoric acid falls under the Plaintiffs' description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which they allege caused their injuries. Exhibit A at ¶ 4.

24. As further explained below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1442(a)(1) because Plaintiffs bring claims for or relating to actions that occurred while DuPont was acting under a federal officer or agency.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1442(A)(1).

25. This Court has subject matter jurisdiction under 28 U.S.C. § 1442(a)(1) because this is a suit against a "person acting under [an] officer[] of the United States or of any agency thereof . . . for or relating to an[] act under color of such office."

26. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation

8

omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original) (internal quotation marks omitted). *Accord id.* at 811 ("Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum."); *see also Cessna v. Rea Energy Cooperative, Inc.*, 753 Fed. Appx. 124, 1127 (3d Cir. 2018) (citing *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007)).

27. The case is removable pursuant to § 1442(a)(1) because "(1) [DuPont] is a 'person' within the meaning of the statute; (2) the plaintiffs' claims are based upon [DuPont's] conduct 'acting under' the United States, its agencies, or its officers; (3) the plaintiffs' claims against [DuPont] are 'for, or relating to' an act under color of federal office; and (4) [DuPont] raises a colorable federal defense to the plaintiff's claims." *Papp*, 842 F.3d at 812 (brackets omitted).

28. Significantly, this Court has recently denied motions to remand two suits against DuPont that included similar claims relating to alleged use or release of chemicals manufactured by DuPont at Chambers Works and elsewhere pursuant to government contracts on the basis that all four prongs for removal under § 1442(a)(1) were satisfied. *New Jersey Dep't of Envtl. Prot. v. E. I. du Pont de Nemours & Co.*, 2020 WL 2041382, at *5 (D.N.J. Apr. 28, 2020); *New Jersey Dep't of Envtl. Prot. v. E. I. du Pont de Nemours & Co.*, 2020 WL 2611539, at *7 (D.N.J. May 22, 2020).

ME1 40338602v.1

### A. DuPont is a "Person" Under 28 U.S.C. § 1442(a)

29. DuPont is a corporate entity, and corporations are "person[s]" pursuant to § 1442(a)(1). *Papp*, 842 F.3d at 812 (for purposes of Section 1442(a), "a corporation[] is in legal fact a person" (citing 1 U.S.C. § 1)).

### B. Plaintiffs' Claims Are Based on DuPont's Conduct While "Acting Under" the United States

30. The second requirement ("acting under" a federal "officer") is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008) (citation omitted). The "acting under" requirement, like the federal officer removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007)); *see also In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 468 (3d Cir. 2015), *as amended* (June 16, 2015).

31. The classic case of government assistance as it relates to government contractors is when "the private contractor acted under a federal officer or agency because the contractors 'help[ed] the Government to produce an item that it need[ed].'" *Defender Ass'n*, 790 F.3d at 468 (quoting *Watson*, 551 U.S. at 153). When "the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete," that contractor is "acting under" the authority of a federal officer. *Ruppel*, 701 F.3d at 1181; *see also Defender Ass'n*, 790 F.3d at 468–70.

32. Here, DuPont was acting under the United States government at Chambers Works when it performed pursuant to government contracts including, but not limited to, W-7412-Eng-2, W-7412-Eng-6, W-7412-Eng-3, W-7412-Eng-22, W-7412-Eng-8, and 670-ORD-2210 ("Chambers Works Contracts") to produce chemicals including but not limited to perfluoroheptane, perfluoroxylene, fluorolube, uranium dioxide, anhydrous hydrofluoric acid, and dinitrotoluene ("Chemical Compounds") that were used to make ammunition and other products required by the government for the war effort.

33. DuPont was acting under the supervision of the United States government at Chambers Works as the Chambers Works Contracts contain provisions which dictate the government specifications that DuPont was required to follow in manufacturing each Chemical Compound.

34. Moreover, DuPont's performance of the Chambers Works Contracts plainly satisfies the "acting under" requirement because the Chambers Works Contracts required DuPont to work for the government by producing Chemical Compounds that the government needed to advance the war effort.

35. In fact, DuPont contracted with the government to manufacture products that DuPont had not previously produced, including, but not limited to perfluorheptane, uranium dioxide, and metallic uranium. DuPont's sole purpose in manufacturing these chemicals was due to government demand.

36. Thus, DuPont was acting under government supervision and direction at Chambers Works in manufacturing the Chemical Compounds as DuPont's production was done pursuant to

government specifications, and DuPont was producing the Chemical Compounds to assist the government with products that the United States government needed during a time of war.

### C. Plaintiffs' Claims against DuPont Are "For, or Relating To" Acts under Color of Federal Office

37. The next requirement, often referred to as the "nexus" requirement, demands that the alleged conduct have been undertaken "for or relating to" a federal office.[2] To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *Defender Ass'n*, 790 F.3d at 471. With respect to alleged discharge or release of substances used or related to DuPont's performance of the government manufacturing contracts set forth above, as this Court recognized in denying motions to remand other cases removed by DuPont on the same basis, it is sufficient for the removing party to allege, as DuPont does here, "that the manufacturing process of certain materials [at issue] . . . was at behest of the government and is related to the discharges that from [sic] the basis of Plaintiffs' complaint." *New Jersey Dep't of Envtl. Prot.*, 2020 WL 2611539, at *4-5.

38. In the matter at bar, Plaintiffs allege that from 1891 to 2015, DuPont owned and operated Chambers Works and produced, used, and discharged into the environment approximately 1,200 separate chemicals, pollutants, and other hazardous substances. Exhibit A at ¶¶ 73, 74. Plaintiffs allege that their injuries were caused by DuPont's release, discharge, use, and/or storage of an exhaustive inventory of chemicals—a list which encompasses all 1,200 of these substances. *Id.* at ¶¶ 3, 4, 31. Plaintiffs allege that PFAS and supposed, unenumerated "other toxins" resist degradation and persist "indefinitely" in the environment. *Id.* at ¶¶ 42, 43. Plaintiffs

---

[2] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

repeatedly allege that their injuries were caused by DuPont's conduct "at all relevant times", "for decades", and "at all material times hereto." *See*, *e.g.*, *id.* at ¶¶ 80, 132, 143. And finally, Plaintiffs allege that even a single exposure to PFAS and "other toxins" could have caused their injuries. *Id.* at ¶ 9.

39. As demonstrated by the Chambers Works Contracts, DuPont produced and utilized at Chambers Works the types of substances Plaintiffs allege caused their injuries, as ordered by the U.S. government.

40. Therefore, the "for or relating to" prong is satisfied because Plaintiffs' claims arise at least in part from DuPont's production of certain chemicals manufactured at the government's behest and pursuant to military specifications. Plaintiffs' claims encompass the entire period of DuPont's operation of Chambers Works, and Plaintiffs specifically list the types of chemicals DuPont produced at Chambers Works at the government's behest and pursuant to military specifications as causing or contributing to their injuries. *Id.* at ¶ 4. For example, two of DuPont's government contracts were for the production of halogenated hydrocarbons, a class of chemicals that form a major component of Plaintiffs' allegations. *Id.* at ¶ 4(b).

41. Further, Plaintiffs claim that what they purport are "other toxins" allegedly persist in the environment "indefinitely" and that even a single exposure could have caused their injuries. *Id.* at ¶¶ 9, 42, 43. Accordingly, Plaintiffs not only allege that the types of chemicals manufactured by DuPont for the federal government caused their injuries, but also that the "other toxins" manufactured by DuPont for the federal government caused Plaintiff's injuries because they allege these chemicals persist indefinitely and a single exposure could have caused their injuries.

ME1 40338602v.1

### D. DuPont Has Colorable Federal Defenses to Plaintiffs' Claims

42. "At the removal stage," DuPont need only show that a federal defense is "legitimate and could reasonably be asserted, given the facts presented and the current law." *Papp*, 842 F.3d at 815 (brackets omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense"). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted). The Court's role here is "not to resolve whether the defendant has established the [] defense or to resolve factual disputes, but only to ensure the existence of some competent evidence supporting a 'colorable' federal defense." *N.J. Dep't of Envtl. Prot.*, 2020 WL 2611539, at *5 (citing *Cuomo,* 771 F.3d at 117).

43. DuPont is immune from Plaintiffs' state law tort claims[3] based on the government contractor defense, as articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), which stated that the "uniquely federal interest" of "getting the Government's work done" requires that under certain circumstances, a private contractor must be protected from tort liability associated with its performance of a government procurement contract. *Id.* at 504–05. The *Boyle* Court held that federal interests preempt state law duties and immunize defendants when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512.

44. DuPont is likewise immune under the related principle of derivative sovereign immunity articulated in *Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18 (1940). Under *Yearsley*, a contractor that acts in conformity with government specifications pursuant to a duly authorized contract is shielded from liability for claims resulting from its performance of the allegedly defective specifications. *See Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1215 n.4 (3d Cir. 1989) ("The notion of shielding contractors from liability for defective government specifications . . . dates at least as far back as *Yearsley*…, which held that a contractor building dikes pursuant to a government contract was not liable for erosion if the contractor's performance adhered to the government's specifications." (internal citation omitted)); *New Jersey Dep't of Envtl. Prot.*, 2020 WL 2041382, at *4 (holding that DuPont raised colorable federal

---

[3] Plaintiffs' Complaint alleges the following state tort claims against DuPont: Negligence, Gross Negligence and Recklessness, Private Nuisance, Public Nuisance, Past and Continuing Trespass, Strict Liability (Abnormally Dangerous Activities), Strict Liability (Failure to Warn), Strict Liability (Defective Design), and Loss of Consortium and Services. *See* Exhibit A.

ME1 40338602v.1

defense under *Yearsley* based upon Notice of Removal alleging that it produced chemicals that Plaintiff alleged were released or discharged from site pursuant to valid contracts with the federal government in connection with war efforts).

45.     Given Plaintiffs' allegations, namely, that DuPont is liable in tort due to its production, utilization, and discharge of allegedly hazardous materials over a 125-year period at Chambers Works, and considering the Chambers Works Contracts requiring DuPont to produce at least some of the allegedly hazardous materials identified in the Complaint during that time period, under precise government specifications, using plants and equipment built for the government, DuPont is entitled to assert the government contractor defense articulated in *Boyle* and the related derivative sovereign immunity defense set forth in *Yearsley*. *See New Jersey Dep't Envtl. Prot. v. Exxon Mobil Corp.*, 381 F. Supp. 2d 398, 404 (2008) (finding that Defendant's government contractor defense was colorable where certain of its production activities during World War II were under the control of the federal government).

46.     It should be noted that DuPont recently removed four other nearly identical complaints brought by the same plaintiffs' counsel on the same federal officer grounds described here, and these matters are now subject to pending motions to remand.[4]  In response to these removals, Plaintiffs made no significant alterations to the allegations in the present Complaint except to add a one-sentence disclaimer that "[t]he Plaintiff's claims do not arise from discharges or exposures arising from DuPont's U.S. Government Contracts. . . ." *Id.* at ¶¶ 117.

---

[4] *Albritton v. A Clemente, Inc., et al.* (No. 22-cv-00397-NLH-AMD); *Allen v. A Clemente, Inc., et al.* (No. 22-cv-00396-NLH-AMD); *Mesogianes v. A Clemente, Inc., et al.* (No. 22-cv-00394-NLH-AMD); and *Philipp v. A Clemente, Inc., et al* (No. 22-cv-00395-NLH-AMD).

47. This self-serving disclaimer sentence is nothing more than a naked attempt to forum shop and contradicts the claims made in the remaining 211 paragraphs of the complaint. Even so, the disclaimer sentence has no bearing on DuPont's grounds for federal officer removal. Unlike removal on federal subject matter grounds, removal on federal officer grounds is not based solely on the allegations plaintiffs make in their complaint, but also is based on whether a ***defense*** depends on federal law. *See Jefferson Cty.*, 527 U.S. at 431. Plaintiffs claim injuries from a long list of chemicals. DuPont made some of these chemicals at issue for the federal government, and is entitled to raise the production of such chemicals pursuant to government specification "as a defense or an alternate theory" of causation. *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021). Thus, DuPont is entitled to assert the federal officer defense described in detail above, and remove the case on that basis, notwithstanding Plaintiffs' putative disclaimer. Indeed, Plaintiffs' putative disclaimer cannot be squared with their assertion of claims for alleged injuries from certain indistinguishable molecules of "indefinitely" persisting chemicals created for the federal government, and their assertion of claims for every single other molecule Plaintiffs could have come in contact with.

### III. DUPONT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

48. 28 U.S.C. § 1446(a) dictates that the removing defendant file a "short and plain statement of the grounds for removal" with its notice of removal, which DuPont has done here. As confirmed by the Supreme Court in *Dart Cherokee Basin Operating Company LLC v. Owens*, this standard intentionally tracks the standard for putting forth claims and jurisdiction in a complaint (Fed. R. Civ. P. 8(a)), and accordingly the removing defendant need only include plausible allegations of facts in its notice of removal, and need not include evidentiary submissions.

574 U.S. 81, 87-89 (2014).  DuPont has made plausible factual allegations supporting removal on federal officer grounds in detail above.

49. DuPont files this Notice of Removal "together with a copy of all process, pleadings, and orders served upon it" during the state-court proceedings as Exhibit A.  *See* 28 U.S.C. § 1446(a).

50. Venue is proper in this Court pursuant to 28 U.S.C. §§ 110 and 1441(a) because this Court is the United States District Court for the district and division embracing the Superior Court of New Jersey, Law Division, Salem County, where the state court complaint was filed.

51. On April 4, 2022, Plaintiffs served DuPont with a Summons and Complaint. DuPont had not previously been served with process.  Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b).

52. "[Removing Defendant] is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1)." *See, e.g.*, *Durham*, 445 F.3d at 1253; *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 195 (D. Mass. 2008); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999).

53. Pursuant to 28 U.S.C. § 1446(d), DuPont will promptly serve written notice of this Notice of Removal upon counsel for all parties and file a copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Salem County.

54. By filing a Notice of Removal in this matter, DuPont does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the

person, or venue; and DuPont specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

55. DuPont reserves the right to amend or supplement this Notice of Removal.

56. If there are any questions concerning this removal, DuPont respectfully requests the opportunity to present briefing and oral argument in support of removal.

ME1 40338602v.1

|  | */s/ Lanny S. Kurzweil* |
|---|---|
|  | Lanny S. Kurzweil |
|  | Ryan Richman |
|  | McCarter & English, LLP |
|  | Four Gateway Center |
|  | 100 Mulberry St. |
|  | Newark, NJ 07102 |
|  | Telephone: (973) 639-2044 |
|  | Facsimile: (973) 297-3810 |
|  | lkurzweil@mccarter.com |
|  | rrichman@mccarter.com |
|  | *Attorneys for Defendants, E. I. du Pont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC* |

Dated: April 25, 2022